**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: November 17, 2021**



Jeffery P. Hopkins
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| *In re*:<br><br>MICHAEL LOUIS HOLTZ<br><br>*Debtor*. | Case No. 20-12226<br>Chapter 7<br>Judge Hopkins |
| NATIONWIDE JUDGMENT RECOVERY, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>Michael Louis Holtz<br>d/b/a MLH CONSULTING SERVICE, INC.<br>d/b/a SUCCESS ENTERPRISES, INC.,<br><br>*Defendant*. | Adv. Pro. No. 20-01043 |

**ORDER AND MEMORANDUM OPINION (A) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (B) GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (C) DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This matter is before the Court on the Motion for Summary Judgment and Memorandum of Law (Doc. 22) in support thereof filed by the Plaintiff, Nationwide Judgment Recovery, Inc. ("the Plaintiff"); the cross-Motion for Summary Judgment (Doc. 25) filed by the Debtor-Defendant, Michael L. Holtz ("the Defendant"); and the responses (Docs. 26 and 27) and replies (Doc. 28) filed thereto. The Plaintiff seeks an order holding that a debt owed to it by the Defendant is nondischargeable. This debt was established by a final judgment entered against a class of defendants, including Defendant Holtz, on August 14, 2017 by the United States District Court for the Western District of North Carolina (the "District Court") in the case of *Kenneth D. Bell, etc. v. Todd Disner etc.*, Case No. 3:14-cv-91 (the "Bell Judgment"). The Bell Judgment was entered pursuant to the District Court's earlier opinion (the "Bell Opinion") granting summary judgment against that class of defendants. *See Bell v. Disner*, 2016 WL 7007522 (W.D.N.C. Nov. 29, 2016), *aff'd sub nom. Bell v. Li Yu Chen*, 731 F. App'x 239 (4th Cir. 2018).

**Factual Background**

Much of the factual history contained in this memorandum opinion has been extracted from the findings of the District Court in its Bell Opinion. *Id.* In 2010, Paul Burks, through his company Rex Venture Group, LLC ("RVG"), launched a penny auction website called Zeekler.com. The next year, Burks and RVG supplemented Zeekler with a system called ZeekRewards, which was described as a way for Zeekler's penny auctioneers to make additional money by marketing the Zeekler.com site. Part of the ZeekRewards system was the sale of "VIP" bids, a separate product from the typical Zeekler.com penny auction bids. RVG took funds from the sale of ZeekRewards VIP bids and passed them off to ZeekRewards' early investors, creating the impression that ZeekRewards was a much more profitable operation than it truly had been, and leading many

victims to invest and ultimately lose their money in what was later revealed by the Securities and Exchange Commission to be a massive Ponzi scheme.

On August 17, 2012, the SEC filed suit against Burks and RVG in the District Court (the "SEC Action") alleging that the company and its owner were operating an illegal Ponzi scheme. The SEC Action sought to shut down the operations of ZeekRewards, freeze RVG's assets, obtain injunctive and monetary relief against Burks, and appoint a receiver. On the same day the SEC brought suit, RVG and Burks entered into a consent judgment in favor of the SEC. The District Court consent judgment against RVG and Burks "enjoin[ed] them from violating the federal statutes or participating in, or facilitating, the solicitation of any investment in any security or in the offering of a security." *Bell*, 2016 WL 7007522, at *1. Further, in an Agreed Order Appointing Temporary Receiver and Freezing Assets of Defendant Rex Venture Group, LLC, the District Court appointed Kenneth D. Bell as receiver over "the assets, rights, and all other interests of the estate of Rex Venture Group, LLC." *Id.* The court authorized Bell to pursue the avoidance of fraudulent transfers and the disgorgement of profits from ZeekRewards for the benefit of victims of the Ponzi scheme.

In response, in 2014, two years after the SEC Action, Bell filed a "clawback" class action in the District Court asserting claims for relief against certain named defendants, including the "Net Winner Class," a class of people who invested early enough in the ZeekRewards Ponzi scheme to earn a profit of at least one thousand dollars. Among other remedies, Bell's class action against early investors sought to avoid the transfer of assets from RVG to the Net Winner Class under the North Carolina Uniform Fraudulent Transfer Act ("NCUFTA").

Bell filed a motion for summary judgment in the class action that the District Court granted and that resulted the issuance of the Bell Opinion. In the Bell Opinion, the District Court found

that there was "no genuine issue of material fact that ZeekRewards operated as a Ponzi Scheme" and held that the transfers from RVG to the Net Winner Class were fraudulent and would be avoided under the NCUFTA. *Id.* at 11. Later, the District Court entered the Bell Judgment against each of the individuals listed in the Net Winner Class, including Michael Holtz, the Defendant-Debtor in this adversary proceeding. The judgment against Defendant Holtz was for $40,617.02 (the Defendant's "Judgment Debt"). This included his net winnings of $30,244.61, plus $10,372.41 in prejudgment interest. The District Court determined in its opinion that the Defendant had invested only $664.91 in the ZeekRewards scheme and realized net winnings of $30,244.61 in merely seventeen months.

Subsequently, in December 2019, the receiver assigned his interest in the judgment to the Plaintiff, Nationwide Judgment Recovery, Inc. Thereafter, the Defendant sought protection from his creditors by filing the petition for Chapter 7 bankruptcy relief on August 11, 2020 (his fourth bankruptcy case in a 25-year span).[1] On his Schedule E/F, the Defendant listed the Judgment Debt in the amount of $40,617.02 as an unsecured debt owed to the receiver. The Plaintiff timely brought this adversary proceeding seeking a determination by the Court that the Judgment Debt is nondischargeable under § 523(a)(2)(A) and § 523(a)(19), and an ill-defined claim or theory of a constructive trust/ unjust enrichment. The parties filed cross motions for summary judgment.

---

[1] The Defendant-Debtor and his spouse are serial bankruptcy filers. They have jointly filed cases that include a Chapter 13 in 1992 under Case No. 92-16183 that they received a discharge from debts on December 18, 1996, a Chapter 7 in 2002 under Case No. 02-17624 that they received a discharge from debts on January 29, 2003, and another Chapter 13 case in 2007 under Case No. 07-15686 that they received a discharge from debts on November 17, 2010. The underlying bankruptcy currently before the Court, filed on August 11, 2020, represents their fourth case since 1992.

### Discussion

**Jurisdiction**

The Court has both the subject matter jurisdiction and constitutional authority to hear and determine this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

**Summary Judgment Standard**

Summary judgment is governed by Federal Rule of Civil Procedure 56, applicable to adversary proceedings in bankruptcy under Federal Rule of Bankruptcy Procedure 7056. The rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this is accomplished, the non-moving party must establish the existence of facts, beyond mere allegations or denials in the pleadings, that demonstrate a genuine issue for trial. *Id.* at 324; *Anderson*, 477 U.S. at 248.

These standards do not change on account of the parties' filings of cross motions for summary judgment. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). This court must evaluate each summary judgment motion on its own merits and under the same standards, drawing all reasonable inferences against the moving party in each instance. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). Where genuine issues of material fact remain, neither motion should be granted. *Id.*

**The Parties' Motions for Summary Judgment**

The Plaintiff offers three grounds for why it is entitled to a summary judgment ruling that the Defendant's debt is nondischargeable. First, the Plaintiff contends that the debt is nondischargeable under § 523(a)(19) of the Bankruptcy Code, which renders nondischargeable certain debts arising from judgments for violations of securities law. Second, the Plaintiff argues the debt is nondischargeable under § 523(a)(2)(A) because the debt implicates actual fraud on the part of the Defendant. Finally, the Plaintiff argues that the Defendant's net winnings are the subject of a constructive trust and therefore the Judgment Debt is excluded from the bankruptcy case altogether, under an apparent application of § 541(d)—even though the Defendant no longer has possession of or control over any of the net winnings that the District Court determined he had received from the ZeekRewards Ponzi scheme and that that court made subject to a constructive trust.

**The Defendant Is Entitled to Summary Judgment on the Claim Asserted Under § 523(a)(19).**

Congress added the § 523(a)(19) discharge exception to the Bankruptcy Code in 2002 as part of the Sarbanes-Oxley Act to "disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." *Smith v. Gibbons* (*In re Gibbons*), 289 B.R. 588, 591 (Bankr. S.D.N.Y. 2003) (quoting S. Rep. No. 107-146, at 2 (2002)). Section 523(a)(19) represents an attempt "to amend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover losses." 148 Cong. Rec. S1787 (daily ed. March 12, 2002) (statement of Sen. Leahy); *see also* S. Rep. No. 107-146, at 11 (2002) (Congress intended "to amend the federal bankruptcy code to make judgments and settlements arising from state and federal securities law violations brought by state or federal

6

regulators and private individuals non-dischargeable."). Section 523(a)(19) provides an exception from discharge for a debt that:

> (A) is for—
>> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, before, on, or after the date on which the petition was filed, from—
>> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>> (ii) any settlement agreement entered into by the debtor; or
>> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

It has long been the rule that exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Serv., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Therefore, "the Court must construe exceptions to discharge narrowly." *Custom Kilns, Inc. v. Pierron (In re Pierron)*, 448 B.R. 228, 236 (Bankr. S.D. Ohio 2011). These principles apply to the Plaintiff's attempt to have the Defendant's Judgment Debt held nondischargeable under § 523(a). Ultimately, the Plaintiff bears the burden of proof of establishing each element on all claims brought under § 523(a) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

At issue in this adversary proceeding is whether the Bell Judgment and Bell Opinion, when read together, have preclusive effect in establishing the elements for excepting the Judgment Debt from discharge under § 523(a)(19), without the need for further factual determinations by this Court.[2] In its Amended Complaint (Doc. 7) and its Motion for Summary Judgment, the Plaintiff

---

[2] For clarity, the Court summarizes the proceedings and orders issued by the District Court in North Carolina as these relate to this adversary proceeding. To reiterate: The 2012 SEC Action against RVG and Burks resulted in the District

argues that the Bell Opinion and Judgment render the Defendant liable for a nondischargeable debt for a "violation of securities law" (implicating subsection (A)(i) of § 523(a)(19)) or, alternatively, for "common law fraud, deceit, or manipulation" in connection with securities transactions (implicating subsection (A)(ii)). As discussed below, however, the Bell Opinion and Bell Judgment did not find that the *Defendant* violated a securities law, or engaged in common law fraud, deceit, or manipulation. Rather, the judgment against the Defendant was for the avoidance of a transaction carried out by the fraudulent conduct perpetrated by others, namely RVG and Paul Burks, the owner and former top executive of the now defunct RVG.

In the Bell Opinion, the District Court avoided the Ponzi scheme transfers from RVG to the Net Winner Class (which includes the Defendant) under the NCUFTA. *Bell*, 2016 WL 7007522, at *10–11. This ruling necessarily required a finding that the transfer was made with fraudulent intent *by the transferor*, RVG. The District Court's finding of fraudulent intent was illuminated by its discussion and adoption of the "Ponzi scheme presumption," a legal doctrine under which "proof of *operation* of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or defraud creditors to permit avoidance of a fraudulent transfer." *Id.* at 11 (emphasis added). The District Court's ruling that the transfers to the Defendant (and the rest of the Net Winner Class) were fraudulent depended on its finding of actual fraudulent intent by the Ponzi scheme's operator, RVG—*not* a finding of fraudulent intent or wrongdoing on the part of the

---

Court entering a consent judgment shutting down the RVG Ponzi scheme, freezing ZeekReawards' assets and, importantly, appointing Bell as receiver to pursue recovery of payouts from members of the Net Winner Class in order to repay victims of the Ponzi scheme. Then, in 2014, as receiver, Bell instituted the "claw back" class action that resulted in the Bell Opinion and Bell Judgment against each member of the Net Winners Class, identified individually along with their net winnings, including the Defendant. The judgment against Defendant-Holtz was for $40,617.02, which include his net winnings of $30,244.61, plus $10,372.41 in prejudgment interest. In December 2019, the receiver assigned his interest in the judgment to the Plaintiff, Nationwide Judgment Recovery, Inc. The judgment against Defendant from the District Court proceedings constitutes the "Judgment Debt" that is listed in Schedules E/F and is the subject of this adversary proceeding. This Court refers to the Judgment Debt throughout this memorandum opinion.

8

*Defendant.*[3] Therefore, while the Bell Judgment does create a debt owed by the Defendant that requires him to return an avoided fraudulent transfer made to him, this debt is based on the securities law violation or fraud of another entity and individual—in this case, RVG and Burks—and not the conduct of the Defendant.

Currently, there is a split among courts of appeals that have addressed the question of whether § 523(a)(19) excepts from discharge debts that arise from judgments for the securities law violations of another person or entity. Judge Buchanan of this District wrote an authoritative opinion that addressed the circuit split in the case *Uren v. Schuholz (In re Schuholz)*, No. 18-13108, 2019 WL 11639553 (Bankr. S.D. Ohio Oct. 18, 2019). In *Schuholz,* Judge Buchanan performed a thorough and detailed comparison of the leading cases holding the conflicting views. *Compare Okla. Dep't of Sec. v. Wilcox*, 691 F.3d 1171, 1176–77 (10th Cir. 2012) (determining that § 523(a)(19) does not apply to a judgment debt for unjust enrichment resulting from a Ponzi scheme when the debtor was not charged with violating securities laws) *and Sherman v. Sec. and Exch. Comm'n*, 658 F.3d 1009, 1012 (9th Cir. 2011) (similar holding to *Wilcox*) *with Lunsford v. Process Tech. Servs., LLC (In re Lunsford)*, 848 F.3d 963, 968 (11th Cir. 2017) (holding that the text of § 523(a)(19)(A) "precludes discharge regardless of whether the debtor violated securities laws as long as the securities violation caused the debt"). After careful review and consideration, Judge Buchanan followed the rulings of the Ninth and Tenth Circuits, concluding "that § 523(a)(19) excepts from discharge only those debts arising from the debtor's own securities laws violations." *Schuholz*, 2019 WL 11639553, at *7. Although the Sixth Circuit has not spoken, this

---

[3] As discussed below, this is consistent with courts' overwhelming consensus over whom the Ponzi scheme presumption applies to: the operator of the Ponzi scheme. In other words, the presumption applies to the transferor of fraudulent Ponzi scheme transactions.

Court adopts the view expressed in Judge Buchanan's well-reasoned *Schuholz* decision: § 523(a)(19) excepts debts for the debtor's *own* violations, not the violations of another.

This Court has thoroughly examined the Bell Opinion and determined that it does not make any finding of state or federal securities law violations or fraud on the part of the Defendant. Another bankruptcy court from within this circuit, the Bankruptcy Court for the Eastern District of Michigan, was faced with a nearly identical task: examining the Bell Opinion and Bell Judgment, and determining whether those rulings entitled the same Plaintiff, Nationwide Judgment Recovery, Inc., to summary judgment against another defendant-debtor who was a member of the same Net Winner Class as the Defendant in this case. *In re Geredine*, No. 20-49691, 2021 WL 4449228 (Bankr. E.D. Mich. Sept. 28, 2021). That court reached the same conclusion as this Court: "[N]o court has found or concluded that Defendant herself committed any securities law violation or any securities fraud. The court in [the Bell Opinion] did not make any such findings or conclusions." *Id.* at *3. The Bell Opinion and Judgment established the securities violations of another, RVG; they did not establish any violation by the Defendant, nor did they establish any level of fraudulent intent or personal culpability on the Defendant's part. Simply put, "a debt cannot be held nondischargeable under § 523(a)(19) based on the securities violations of another person." *Schuholz*, 2019 WL 11639553, at *1. Because § 523(a)(19) excepts from discharge only debts for a debtor's own violation of securities laws or commission of securities fraud, and because the Bell Opinion and Bell Judgment made no such finding of any wrongdoing by the Defendant, the Plaintiff has failed to establish that it is entitled to judgment as a matter of law, and its motion for summary judgment will be denied as to § 523(a)(19).[4]

---

[4] In its Memorandum of Support of its Motion for Summary Judgment, the Plaintiff argues that this Court should still enter judgment in its favor on nondischargeability under § 523(a)(19) even were it to find (as this Court has indeed found) that the Bell Opinion and Judgment did not determine securities violations by the Defendant personally, because the Bell Opinion supposedly establishes that the debt is one for "common law fraud, deceit, or manipulation"

Section 523(a)(19)(B) also requires that the debt a party is seeking to have held nondischargeable be "memorialized in a judicial or administrative order or in a settlement agreement." *Simon v. Boccarsi (In re Boccarsi)*, 578 B.R. 800, 808 (Bankr. N.D. Ill. 2017). In discussing this requirement, courts refer to the legislative history of § 523(a)(19):

> [S]ection 523(a)(19) contains an additional requirement that is absent from other provisions of section 523. Specifically, it requires that a judgment, order, decree, or settlement agreement must memorialize the debt stemming from a securities law violation. By including this additional requirement, Congress sought to close "[t]his loophole in the law" and "hold accountable those who violate securities laws after a government unit or private suit results in a judgement or settlement against the wrongdoer."

*Bryant v. Clements (In re Clements)*, 570 B.R. 803, 808–09 (Bankr. W.D. Wis. 2017) (quoting 148 Cong. Rec. S7418–01, S7419 (daily ed. July 26, 2002) (statement of Sen. Leahy)). The presence of this additional requirement and its illumination through the legislative history demonstrate that there must be *another* court's judgment or determination of securities law violation or fraud for § 523(a)(19) to apply.[5] Here, the Plaintiff seeks to use the Bell Opinion and Bell Judgment as such memorializing judgments. However, as described above, these orders did not establish the

---

(implicating § 523(a)(19)(A)(ii)). In arguing this, the Plaintiff asserts in its Motion for Summary Judgment that the District Court "found that the Defendant violated [NCUFTA]" and "concluded that Defendant's participation in the Ponzi scheme constituted actual fraud." Notwithstanding these assertions or the apparent implication that the District Court's finding of "actual fraud" was a finding of such fraud on the part of the *Defendant*, this Court has carefully examined the Bell Opinion and determined that it does not make any finding of a securities violation, NCUFTA violation, or fraud by the Defendant. The *Geredine* court performed the same analysis and came to the same conclusion. The Court reiterates here that the District Court found that the Ponzi scheme transfers were fraudulent and thereby avoided those transfers, leading to the judgments against the transferee "net winner" members of the Ponzi scheme— including the Defendant—on account of the fraudulent conduct *of the transferors*, the operators of the Ponzi scheme.

[5] The question of whether a bankruptcy court can itself be the court that provides a "judgment, order, consent order, or decree" resulting in a debt for a securities violation is the subject of a split in authority. Without embarking on a lengthy examination of every consideration courts make when assessing this split, this Court will say that it finds the opinion of *In re Jafari*, 401 B.R. 494, 497 (Bankr. D. Colo. 2009) to be the better reasoned decision and agrees with the *Jafari* court's conclusion that "[§ 523(a)(19)(B)] evidences a conscious choice to have *the liability determination* occur outside of the bankruptcy forum, whether it occurs pre- or post-bankruptcy." *Id.* at 499–500. In examining the caselaw surrounding this split, this Court is particularly persuaded by the reasoning that "interpreting § 523(a)(19) to allow a bankruptcy court to decide whether the requirement[s] of § 523(a)(19)(A) have been met would render § 523(a)(19)(B) meaningless." *In re Bundy*, 468 B.R. 916, 921 (Bankr. E.D. Wash. 2012); *but see In re Chan*, 355 B.R. 494 (Bankr. E.D. Pa. 2006).

*Defendant's* personal culpability in connection with any securities law violation or fraud, and for that reason, the orders are deficient and cannot be used by the Plaintiff to establish a nondischargeable debt under § 523(a)(19).

Because § 523(a)(19) requires a prior memorializing judgment as the basis for a nondischargeable debt, and because the memorializing judgment the Plaintiff seeks to use for that purpose is deficient and cannot support a finding of nondischargeability, the Defendant is entitled to judgment in his favor on the § 523(a)(19) claims as a matter of law. The Defendant's Motion for Summary Judgment will be granted with respect to § 523(a)(19).

**The Claim Asserted Under § 523(a)(2)(A) Raises Material Issues of Fact that Preclude the Court from Awarding Summary Judgment to the Plaintiff or the Defendant.**

The Plaintiff also seeks an order from this Court finding that the Judgment Debt is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. That section excepts from the discharge "any debt"—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The Plaintiff relies heavily upon the Supreme Court decision *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356 (2016), for the proposition that the Judgment Debt is excepted from discharge. In *Husky*, the Court settled a circuit split as to whether a finding of a debtor's "actual fraud" requires a finding that the debtor made a false representation in effectuating his fraud. The Court ruled that a false representation is not necessary for a finding of actual fraud. "The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 359. However, the Court in *Husky* reiterated that the "actual fraud" prong of § 523(a)(2)(A) retains the requirement that the debtor

act with intent to effectuate the fraud: "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* at 360.

Notably, *Husky* specified that *recipients* of a fraudulent transfer can commit fraud if they act with requisite intent and that the resulting debt can be held nondischargeable under § 523(a)(2)(A):

> [T]he recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. . . . If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance . . . will be nondischargable under § 523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A).

*Id.* at 1589 (citations omitted). Here, there is no question that the Defendant was the recipient of a fraudulent transfer. The District Court held that there was "no genuine issue of material fact that ZeekRewards operated as a Ponzi scheme. Accordingly, the law considers transfers from the scheme to be fraudulent transfers that may be avoided under the NCUFTA." *Bell v. Disner,* 2016 WL 7007522, at *11. As a net winner under the RGV Ponzi scheme, the Defendant received fraudulent transfers (winnings) from the operators of the scheme. The Defendant's Judgment Debt exists by virtue of the District Court's avoidance of that transfer. However, the Plaintiff must show more than that Defendant was the recipient of a fraudulent transfer. As clarified in *Huksy*, the Plaintiff must also show that the Defendant *committed fraud* in receiving the transfer, and did so with the requisite fraudulent intent. *Husky*, 578 U.S. at 360.

The Plaintiff faces a similar problem in its quest for summary judgment on its § 523(a)(2)(A) claim as it did with § 523(a)(19): the underlying Bell Opinion and Judgment, upon which the Plaintiff's Motion for Summary Judgment relies to establish the elements of nondischargeability, did not find that the Defendant acted with fraudulent intent, or even that he

13

committed any wrongdoing at all.[6] This lack of any finding of fraudulent intent or conduct on the Defendant's part precludes a ruling in the Plaintiff's favor at the summary judgment phase. The Plaintiff's Motion for Summary Judgment will be denied as to § 523(a)(2)(A).

The lack of a finding of fraudulent conduct or intent by the District Court does not, however, entitle the Defendant to summary judgment on the § 523(a)(2)(A) claim. Unlike § 523(a)(19), § 523(a)(2)(A) does not carry a requirement that the judgment be based on a "memorialized order" from another court, so the Bell Opinion's deficiency is not lethal to the Plaintiff's claim under that section. *See Schuholz*, 2019 WL 11639553 at *1 (explaining that, unlike in § 523(a)(19), the lack of "specific findings [from a prior court] that would establish certain elements required to hold the debt nondischargeable under § 523(a)(2)(A) … does not preclude this Court from making its own determination of those issues at trial").

In the case before this Court, the Defendant concedes that he became involved with ZeekRewards on the promise that "he could earn money on-line by recruiting people to be involved in the business of ZeekRewards." *See* (Docs. 13 and 25). The Defendant also admits in pleadings that he expects "to testify that his involvement included Facebook marketing and education through seminars and email." *Id.* At this stage of the proceedings, the Court cannot ascertain one

---

[6] The Plaintiff's motion contained a great deal of discussion of the "Ponzi scheme presumption," under which many courts, including courts within the Sixth Circuit, will infer fraudulent intent to the actions of the operator of a Ponzi scheme. *See, e.g.*, *JRS Partners, GP v. Warren*, 2021 WL 1143829, at *5 (M.D. Tenn. Mar. 25, 2021) ("Under the 'Ponzi scheme presumption,' courts have found that investment transfers through Ponzi schemes are presumed to be made with 'actual intent to hinder, delay or defraud' creditors.'") (quoting *Gordon v. Royal Palm Real Est. Inv. Fund I, LLP*, 2020 WL 2836312, at *8 (E.D. Mich. May 31, 2020)); *see also Conroy v. Shott*, 9 Ohio Misc. 117, 363 F.2d 90, 92 (6th Cir. 1966).

Crucially, as mentioned above, courts use this presumption to infer the fraudulent intent of the perpetrators of the Ponzi scheme, not the members. "Actual fraudulent conveyance claims . . . turn on the intent of the debtor in making the transfer; the state of mind of the transferee is irrelevant." *Bash v. Textron Fin. Corp.*, 524 B.R. 745, 756–57 (N.D. Ohio 2015) (quoting *In re Bayou Group, LLC*, 439 B.R. 284, 304 (S.D.N.Y. 2010)); *see also S.E.C. v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007); *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008); *In re Petters Co., Inc.*, 495 B.R. 887, 907 (Bankr. D. Minn. 2013). Because the Ponzi scheme presumption acts only to establish the intent of the Ponzi scheme's perpetrators and not that of its members, the Plaintiff cannot point to this presumption to establish fraudulent intent by the Defendant.

way or the other if the Defendant had the requisite fraudulent intent or committed any fraud while profiting from the RVG Ponzi scheme. This precludes the Court from ruling in the Defendant's favor at the summary judgment phase. In addition, the Plaintiff has presented some evidence of the Defendant's fraudulent intent that, while limited and circumstantial, also precludes entry of summary judgment in Defendant's favor on the § 523(a)(2)(A) claim. For example, the Plaintiff contends that the Defendant's fraudulent intent in dealing with the RVG Ponzi scheme is evidenced by his failure to research RVG's ZeekRewards program or examine any of its financial records, especially after "earning" an extremely high return of $30,244.61 in just seventeen short months on a meager $664.91 investment. "Because the Debtor's subjective intent is in issue, summary judgment is generally not an appropriate mechanism for adjudication of an actual fraudulent transfer claim." *Rieser v. Hayslip (In re Canyon Systems Corp.)*, 343 B.R. 615, 636 (Bankr. S.D. Ohio. 2006). The Defendant's Motion for Summary Judgment will be denied as to § 523(a)(2)(A).

**The Court will Hold in Abeyance the Disposition of the Motion for Summary Judgment on the Constructive Trust Claim.**

Finally, the Plaintiff argues, citing § 541(d), that it is entitled to an order from this Court excluding the Defendant's Judgment Debt consisting of $30,244.61 (plus accrued interest), from his bankruptcy estate altogether. In so arguing, the Plaintiff points out that the District Court, in its Bell Opinion and Judgment, established that the net winnings were the subject of a constructive trust. The Plaintiff argues strenuously that "the [Defendant] will be unjustly enriched should he be allowed to discharge the [constructive trust] Judgment that resulted from his participation in a Ponzi scheme." Doc. 24 at 28. Citing no authority under § 523(a) of the Bankruptcy Code, the Plaintiff contends that "[b]ankruptcy should not be used as a vehicle by which this [Defendant]

15

can discharge his personal liability on the [constructive trust] Judgment obtained as the result of [the Defendant's] own fraudulent activity and which resulted in his unjust enrichment." *Id.*

There appears to be no dispute between the parties that the evidence will show that this case, for all intents and purposes, is a no asset Chapter 7. Indeed, the Schedules clearly demonstrate that the Defendant does not own or control any non-exempt property. In other words, the Defendant almost certainly has spent all the funds unlawfully obtained from the RVG Ponzi scheme. With funds from the Ponzi scheme dissipated, the constructive trust created by the District Court's Bell Opinion and Judgment cannot attach or be traced to the Defendant's personal bank accounts or funds under his control. *See* Doc. 25, Ex. 1 (the Defendant stating in his answers to the Plaintiff's interrogatories that the bank account containing all his funds from ZeekRewards had been closed for more than two years, and that his only recollection of the disposition of those funds was that the money was used to pay "living expenses for [a] family with five children").

Unlike the situation confronted by the bankruptcy judge in *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994), this Court is not being asked to impose the extraordinary remedy of impressing a constructive trust over specific funds controlled by the Defendant. A constructive trust has already been ordered. Two years ahead of his bankruptcy petition filing (on August 11, 2020), the District Court subjected the Defendant's net winnings to a constructive trust when rendering the Bell Opinion and Judgment (on August 17, 2017). The problem here, though, is not with the creation of a constructive trust. Rather, it is that the Plaintiff cannot identify or trace any funds impressed by the District Court's prepetition constructive trust—if ever they did exist at the time the Bell Opinion and Judgment were entered in August of 2017—some five years after the SEC Action shut down the RVG Ponzi scheme in August of 2012. For all practical purposes, the constructive trust supposedly impressed against the Defendant's net winnings (and, this Court

suspects, those of many of the other low dollar net winners) was a nullity from the start. In the hands of small investors—ordinary citizens and consumers—those funds likely had all been spent well before the Bell Opinion and Judgment were ever entered. For our purposes, the Plaintiff cannot attempt to exclude from the bankruptcy estate in this proceeding any of the funds that the Defendant unlawfully received from the RVG Ponzi scheme, let alone assert that it is "entitled to priority . . . as a secured creditor by virtue of the [District Court's constructive trust] judgment" as outlined, in dicta, by the Sixth Circuit in the *Omegas Group* decision. *Id*. at 1451. The funds received from the RVG Ponzi scheme have all but certain dissipated. Thus, for all practical purposes this Court cannot exclude those funds from the bankruptcy estate under § 541(d). Nor can this Court order that the Plaintiff be treated as a priority claimant that enjoys secured creditor status in connection with the funds as the Sixth Circuit in *Omegas Group* appears to allow.

At its core, the Plaintiff contends that the Bell Opinion and Judgment impressing the Defendant's net winnings with a constructive trust permanently excepts the Judgment Debt from discharge—otherwise, according to the Plaintiff, the Defendant will walk away scot-free from these bankruptcy proceedings having been unjustly enriched from his participation in an unlawful Ponzi scheme to the detriment of multiple unsuspecting victims. This argument appears to be nothing more than a veiled attempt to circumvent the strictures of § 523(a)(19). For the reasons already provided, this Court has found that the minority view expressed by the Eleventh Circuit in *Lunsford*, 848 F.3d 963, that deems a § 523(a)(19) debt nondischargeable is untenable under the circumstances in this case and that the Defendant is entitled to Summary Judgment on that claim. The District Court (which has concurrent jurisdiction) did not, as it could have, expressly except the constructive trust/unjust enrichment debt of the Net Winner Class from discharge under § 523(a)(19). § 523(c); *see also In re Jafari*, 401 B.R. 494, 497 (Bankr. D. Colo. 2009)

17

("[B]ankruptcy courts and non-bankruptcy courts share concurrent jurisdiction to determine the dischargeability of a § 523(a)(19) claim."); *In re Chan*, 355 B.R. 494, 505 (Bankr. E.D. Pa. 2006) (finding that, "[b]ased on the concurrent jurisdiction which exists, it is perfectly appropriate for either the bankruptcy court or another court to make a dischargeability determination under § 523(a)(19)," while also separately ruling, *contra* this Court, that bankruptcy courts have the authority to independently determine a debtor's liability for a securities violation). Thus, the only means by which the Plaintiff can now prevail on having the Judgment Debt under its unjust enrichment/constructive trust theory excepted from discharge is to prove, by the preponderance of the evidence, that one of the other exceptions of § 523(a) applies—and it has chosen as its vehicle § 523(a)(2)(A). To hold otherwise, the Court would need to ignore more than half a century of well-established bankruptcy jurisprudence that mandates that exceptions to discharge are strictly construed against creditors. *Rembert*, 141 F.3d at 281.

      Based on the foregoing, it is incumbent upon the Plaintiff to set forth with more specificity how the constructive trust/unjust enrichment argument raised in the pleadings and during oral argument excepts the Judgment Debt from discharge and how that contention is warranted by existing law or a nonfrivolous argument for the extension or establishment of new law. As discussed at this Court's status conference hearing held on November 9, should the Plaintiff want to continue pursuing this claim, the parties will be required to submit supplemental briefs on that topic. As such, this Court's ruling on the parties' Motions for Summary Judgment as it relates to the constructive trust/unjust enrichment claim asserted by the Plaintiff is held in abeyance pending receipt of additional briefing. The schedule for the supplemental briefs due on the constructive trust/unjust enrichment nondischargability claim will be established by separate order from this Court.

Alternatively, the Plaintiff, if it wishes, can withdraw its claim that the Judgment Debt should be excepted from discharge under its constructive trust / unjust enrichment theory. In the event that the Plaintiff abandons that claim, **the Plaintiff shall have fourteen (14) days** from the entry of this memorandum opinion to do so by filing a notice of withdrawal with this Court. If the Plaintiff abandons the constructive trust judgment claim, the Court shall deem that claim to have been dismissed, pursuant to Federal Rule of Civil Procedure 16, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure Rule 7016(a). *See also* Fed. R. Civ. P. 16(c)(2)(A), (K), & (P) ("At any pretrial conference, the court may consider and take appropriate action," including "eliminating frivolous claims and defenses," "disposing of pending motions," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action.").

Finally, it is worth noting that, for the moment at least, the Defendant enjoys the benefit that other similarly situated small dollar net winners who have sought protection under the bankruptcy laws possess—of being presumed to be an *honest*, but unfortunate debtor. If, however, the evidence later shows that the Defendant did "anything that counts as 'fraud'" and "with wrongful intent," or, in other words, that he had been *dis*honest in any way when he participated in and profited from the unlawful RVG Ponzi scheme, then the Judgment Debt will be excepted from discharge under the Supreme Court's application of § 523(a)(2)(A) in *Husky*. 578 U.S. at 360.

Until Congress provides more explicit direction on what bankruptcy courts are to do in cases of low-level net winners who have not yet been shown to have committed fraud, the Court believes that its application of the § § 523(a)(2)(A) and (a)(19) exceptions to discharge best harmonizes and preserves longstanding principles underlying the Bankruptcy Code. This holding simply requires the Plaintiff and creditor in this case, Nationwide Judgment Recovery, Inc., who

is equipped with far superior resources and is pursuing collection actions against numerous small dollar net winners across the country, to undertake the additional step of proving that those individuals played an active role in the fraud and were not simply naive early arrivals to a Ponzi scheme they knew little about but happened to be net winners of within days of when the operation was shut down.

## Conclusion

For the reasons stated above, the Plaintiff Nationwide Judgment Recovery, Inc.'s Motion for Summary Judgment IS **DENIED** as to the §§ 523(a)(19) and 523(a)(2)(A) claims. The Defendant Michael Louis Holtz's cross-Motion for Summary Judgment is **GRANTED** as to § 523(a)(19) and **DENIED** as to § 523(a)(2)(A). The Court reserves its judgment on the constructive trust claim.

**IT IS SO ORDERED.**

Copies to:

Phyllis Ulrich, Counsel for the Plaintiff (electronically)
Christine Hill, Counsel for the Defendant (electronically)